IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MAXXIM INDUSTRIES USA II, LLC, | § § § | |
| *Plaintiff,* | § § § | SA-24-CV-00046-FB |
| vs. | § § § | |
| TEXAS CHROME TRANSPORT, INC., | § § § | |
| *Defendant.* | § § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Texas Chrome Transport, Inc.'s Motion to Dismiss [#32]. All pretrial matters in this case have been referred to the undersigned for disposition, and the undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be denied.

## I. Background

This action alleges infringement of trade dress and misappropriation of trade secrets. Plaintiff Maxxim Industries USA II, LLC ("Maxxim") alleges that it is a Texas-based market leader in the design, manufacture, and sale of "bottom-drop" and "end-dump" sand trailers for use in the oil and gas industry. (Compl. [#1], at ¶¶ 6–7.) According to Maxxim's Complaint, Defendant Texas Chrome Transport, Inc. ("TCT") is a logistics company providing services across the Southern United States, including Texas, and was a prospective customer of Maxxim. (*Id.* at ¶ 8.) Maxxim alleges that TCT has recently begun manufacturing and selling sand trailers

1

like the ones Maxxim has been designing since 2017 by stealing Maxxim's designs and diverting customers from Maxxim's established customer base.  (*Id.*)

According to the Complaint, TCT gained access to Maxxim's proprietary and confidential information by contracting with former Maxxim employees, Peter Klassen and John Blatz, despite these employees signing Non-Competition or Confidentiality Agreements with Maxxim to preserve Maxxim's trade secrets.  (*Id.* at ¶¶ 9–12.)  Maxxim alleges that, since separating their employment with Maxxim, Klassen and Blatz have formed a new company, Dustrail.  (*Id.* at ¶ 15.)  Maxxim claims that Dustrail is manufacturing and selling sand trailers virtually identical to Maxxim's trailers and directly competing with Maxxim for sale of the trailers to TCT and other customers.  (*Id.* at ¶¶ 15–18.)  Maxxim asserts in the Complaint that it is involved in litigation against Klassen and Blatz in Mexico, where Dustrail manufactures the trailers, to attempt to stop their alleged theft of its trade secret information.  (*Id.* at ¶ 20.)

Maxxim claims TCT knew the Dustrail sand trailers were copies of its designs but nonetheless purchased the trailers and sold them to its own customers.  (*Id.* at ¶ 19.)  As evidence of TCT's knowledge of Dustrail's infringement, the Complaint references an email sent by TCT's President of Operations, Raul Mendez, to Klassen on March 16, 2023, stating that the pictured trailer Dustrail was offering for sale "look[ed] a lot like a Maxxim trailer" and "look[ed] like it [was] being built off the same location."  (*Id.*)  The Complaint also references an article in which TCT described the Dustrail trailer as "similar to Maxxim, but with some differences built in."  (*Id.* at ¶¶ 21–22.)  The Complaint alleges that, despite its knowledge that the sand trailers purchased from Dustrail are copies of Maxxim's confidential designs, TCT has begun designing and placing both Dustrail and its own copycat trailers in the stream of commerce and is marketing them throughout the logistics industry.  (*Id.* at ¶¶ 21–24.)

The Complaint asserts the following causes of action against TCT based on these allegations: (1) trade-dress infringement/unfair competition in violation of the Lanham Act, 15 U.S.C.S. § 1125(a)(1); (2) trade-secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1832, *et seq.*; (3) violation of the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A.003(a); (4) tortious interference with an existing contract; (5) knowing participation in Klassen's and Blatz's breach of fiduciary duty; and (6) tortious interference with a prospective business relationship. (*Id.* at ¶¶ 25–71.) By this suit, Maxxim seeks both a permanent injunction against TCT prohibiting the manufacture, sale, and commercial use of the sand trailers at issue, as well as damages. (*Id.* at ¶ 73.)

TCT has filed a motion to dismiss, arguing that this case must be dismissed for failure to join Dustrail, Klassen, and Blatz as necessary and indispensable parties under Rule 12(b)(7) and for failure to state a claim under Rule 12(b)(6) as to all claims other than Maxxim's claim arising under the Lanham Act. Maxxim filed a response to the motion [#37], to which TCT filed a reply [#42]. The Court held a hearing on the motion on August 8, 2024, at which counsel for both parties appeared via videoconference and provided additional argument to the Court. The motion is ripe for disposition.

## II.  Motion to Dismiss under Rule 12(b)(7)

TCT's motion argues that Maxxim's Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(7) because Maxxim should have but failed to join Dustrail, Klassen, and Blatz as necessary and indispensable parties. Rule 12(b)(7) allows for dismissal of an action for "failure to join a party under Rule 19." Rule 19 provides a mechanism for requesting joinder of an unnamed, yet necessary, party. Fed. R. Civ. P. 19. Under Rule 19(a), "a person who is

3

subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" so long as:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Rule 19(b) explains that if a person who is required to be joined under Rule 19(a) "cannot be joined" because joinder is "not feasible," the court must determine whether the action should proceed among the existing parties or be dismissed. *Id.* R. 19(b). The rule sets out various factors for a court's consideration in evaluating whether a case should proceed or be dismissed:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

Accordingly, a motion to dismiss under Rule 12(b)(7) requires a two-step inquiry. *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). First, a court evaluates

4

whether there is a "necessary" party under Rule 19(a)(1) who was not included in the lawsuit but is subject to service and whose presence will not destroy the Court's subject matter jurisdiction. *Id.* If the party is found to be necessary under Rule 19(a) but cannot be joined in the lawsuit due to jurisdictional or other issues, then the court goes on to evaluate whether the party is "indispensable," such that litigation cannot "be properly pursued without the absent party" and the case must be dismissed. *Id.* at 629.

The party advocating joinder and moving for dismissal based on Rule 12(b)(7) has the initial burden of demonstrating that a missing party is "necessary" to the suit. *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986). But after "an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Id.* These burdens can be met by providing "affidavits of persons having knowledge of [the parties'] interests as well as other extra-pleading evidence." *Sterling Foods, Inc. v. Gibbs-McCormick, Inc.*, No. SA-09-CA-812-OG, 2010 WL 11603224, at *5 & n.63 (W.D. Tex. Aug. 9, 2010) (citing *Estes v. Shell Oil Co.*, 234 F.2d 847, 849 & n.5 (5th Cir. 1956) (reversing dismissal on Rule 12(b)(7) motion because allegations in complaint, "affidavits and other proofs adduced in contradiction or support thereof" did not support dismissal)).

The District Court should deny TCT's motion because TCT has failed to satisfy its initial burden to demonstrate that Dustrail, Klassen, and Blatz are necessary parties under Rule 19(a). As outlined above, there are three types of necessary parties under Rule 19: (1) parties needed to give complete relief to the existing parties, Fed. R. Civ. P. 19(a)(1)(A); (2) parties who claim interests which could be practically impaired or impeded if not joined, *id.* R. 19(a)(1)(B)(i); and (3) parties necessary to ensure that existing parties are not exposed to multiple or inconsistent

obligations, *id.* R. 19(a)(1)(B)(ii). *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 265–66 (5th Cir. 2022), *cert. denied,* 143 S. Ct. 1054 (2023). TCT has not satisfied its burden to demonstrate the absent parties are necessary under any of these three theories.

TCT first claims that Dustrail, Klassen, and Blatz are necessary under Rule 19(a)(1)(A) because only these parties can provide Maxxim the relief it seeks through this suit. This argument lacks merit. Maxxim seeks damages and a permanent injunction prohibiting TCT from manufacturing, selling, of otherwise commercially using any bottom-drop and end-drop trailers; prohibiting TCT from using or disclosing any of Maxxim's trade secrets and/or confidential information; prohibiting TCT from purchasing sand trailers from Dustrail or any other company in which Klassen or Blatz is employed; and requiring TCT and anyone acting in concert with TCT to return all of Maxxim's trade secrets and confidential information. (Compl. [#1], at ¶ 73 and "Prayer for Relief".) According to TCT, this Court cannot provide the requested injunction without Dustrail, Klassen, and Blatz as parties in this suit because the Vice President of Operations for TCT, Raul Mendez, has testified that TCT is not manufacturing or selling any bottom-drop and end-dump trailers and that TCT does not possess any and is not using any of Maxxim's trade secrets. (Mendez Decl. [#12-1], at ¶¶ 1–16.)

Mr. Mendez's declaration does not foreclose TCT's possible liability in this case, and it does not establish that the Court could not fashion an injunction that affords complete relief among the existing parties—Maxxim and TCT. The declaration at issue expressly denies the allegation that TCT is manufacturing or selling trailers and unequivocally states that TCT "has never manufactured or sold trailers." (*Id.* at ¶ 6.) Yet TCT could still be liable for trade-dress infringement even if it is not in the business of manufacturing and selling trailers, as the Lanham Act imposes liability on persons who use allegedly infringing goods in commerce in addition to

6

infringing manufacturers and sellers. *See* 15 U.S.C. § 1125(a)(1). Mr. Mendez admits in his declaration that TCT is a trucking company that purchases and uses trailers to deliver sand and other materials in the oil and gas industry and that it has purchased Dustrail trailers though third parties, such as Guerra Truck Center in Comverse, Texas. (Compl. [#1], at ¶¶ 7–15.) If TCT is found liable for infringement as a user of the infringing sand trailers, the Court could fashion an injunction affording meaningful relief between Maxxim and TCT, which would prevent TCT from future use of the trailers.

Nor has TCT established that because Dustrail, Klassen, and Blatz provided the allegedly infringing trailers to TCT (and might also be liable for their own actions) they must be joined in this suit. *See PCM Sales, Inc. v. Quadbridge, Inc.*, No. 3:14-CV-2806-L, 2016 WL 407300, at *7 (N.D. Tex. Feb. 3, 2016) (finding non-parties not necessary to the suit even though suit sought return of confidential information and non-parties had provided that information to defendant, as court could still "accord complete relief among the existing parties"). Moreover, as to any monetary relief obtained by Maxxim in this suit, TCT has not demonstrated that any future right to contribution from Dustrail, Klassen, and Blatz makes them necessary parties under Rule 19. *See Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880 (5th Cir. 1987) ("Rule 19 does not require the joinder of joint tortfeasors" or those against whom a party has a claim for contribution.)

TCT has also failed to establish that Dustrail, Klassen, and Blatz are parties whose interests would be impaired if not joined under Rule 19(a)(1)(B)(i) or that failing to include them in the suit could expose existing parties to multiple or inconsistent obligations under Rule 19(a)(1)(B)(ii). To prevail on its 12(b)(7) motion, TCT bears the burden to "show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury to

7

them or that the parties before the court will be disadvantaged by their absence." 7 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 1359 (3d ed. 1998). TCT argues that any judgment in this suit could affect its ability to protect itself in future proceedings pertaining to the products at issue and could conflict with the judgment in the suit between Maxxim and Dustrail currently pending in Mexico. These interests and conflicts are not the type contemplated by Rule 19(a)(1)(B).

"Inconsistent obligations occur when an *existing* party cannot comply with one court's order without breaching the order of another court that pertains to the same incident." *Broad. Music, Inc. v. Armstrong*, No. EP-13-CV-0032-KC, 2013 WL 3874082, at *7 (W.D. Tex. July 24, 2013) (emphasis in original); *see also James v. Valvoline, Inc.*, 159 F. Supp. 2d 544, 551 (S.D. Tex. 2001) ("This portion of Rule 19 is simply not concerned with non-parties" but rather with the obligations of existing parties.). TCT is not a party to the suit in Mexico. A judgment in that case against Dustrail, Klassen, and Blatz therefore could not result in an inconsistent obligation for TCT for purposes of Rule 19(a)(1)(B)(ii). TCT has not shown that Dustrail, Klassen, and Blatz are necessary in this suit to prevent TCT or Maxxim from being exposed to inconsistent obligations.

As to Rule 19(a)(1)(B)(i), TCT generally argues that Dustrail, Klassen, and Blatz have an interest in the design, manufacture, and trade dress of Dustrail trailers—the trailers at issue in this suit. But TCT has not articulated how this interest would be impaired if they are not joined in this suit. "Rule 19(a)(1)(B) is applicable only when the absent party's interest in the subject matter of the underlying action is not 'indirect or contingent,' but rather is 'of such a direct and immediate character that the absent party will either gain or lose by the direct legal operation and effect of the judgment.'" *Pavecon Holding Co. v. Tuzinski*, No. 4:16-CV-00888-ALM-CAN,

2017 WL 2539414, at *3 (E.D. Tex. May 19, 2017), *report and recommendation adopted*, No. 4:16-CV-888, 2017 WL 2506468 (E.D. Tex. June 9, 2017) (quoting *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318, 1324–25 (Fed. Cir. 2007) (collecting cases)).

Dustrail, Klassen, and Blatz may have an interest in continuing to sell their trailers to customers like TCT (whether directly or through third parties like Guerra Trucking) and could therefore be affected by any judgment of infringement in this action. However, it is not enough that an absent party might be "adversely affected by the outcome of the litigation." *MasterCard Int'l v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 387 (2d Cir. 2006). Rather, necessary parties are "only those parties whose ability to protect their interests "would be impaired because of [their] absence from the litigation." *Id.* TCT has not articulated the basis for such a finding. Moreover, Dustrail, Klassen, and Blatz have not attempted to join in this litigation. "[T]he fact that an absent party does not seek joinder by its own volition indicates that it lacks an interest relating to the subject matter of the action." *Broad. Music*, 2013 WL 3874082, at *6.

In summary, TCT has not carried its burden to demonstrate Dustrail, Klassen, and Blatz are necessary parties to this litigation under Rule 19(a). The Court therefore need not proceed to the second-step of the Rule 19 inquiry and should deny TCT's motion to dismiss pursuant to Rule 12(b)(7).

### III. Motion to Dismiss under Rule 12(b)(6)

TCT also moves for dismissal of all Maxxim's claims except for its claim under the Lanham Act pursuant to Rule 12(b)(6). TCT claims that Maxxim's Complaint does not contain sufficient facts, taken as true, from which the Court can infer plausible claims of trade secret misappropriation under DTSA and TUTSA (Claims 2 and 3), tortious interference with

prospective business relationships (Claim 6), and tortious interference with an existing contract and breach of fiduciary duty (Claims 4 and 5). The undersigned considers each of these claims in turn.

## A.     Maxxim pleads plausible violations of DTSA and TUTSA.

TCT argues that Maxxim's claims for trade-secret misappropriation under DTSA and TUTSA fail as a matter of law because Maxxim's Complaint does not identify the alleged trade secret with sufficient particularity and fails to sufficiently allege that TCT misappropriated or is using any trade secret.

The statutory texts of DTSA and TUTSA are virtually identical, and claims under DTSA and TUTSA require proof of the same elements (other than the interstate commerce element required in DTSA, which is not at issue here). *Clean Energy v. Trillium Transp. Fuels, LLC*, No. H-19-244, 2022 WL 4451865, at *2 (S.D. Tex. Aug. 24, 2022). Accordingly, courts usually analyze DTSA and TUTSA claims collectively. *Id.* To plead a cause of action under either statute, a plaintiff must allege facts establishing the following elements: (1) the existence of a trade secret; (2) that was acquired through the breach of a confidential relationship or through improper means; (3) that the defendant used without the plaintiff's permission. *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018).

TCT claims Maxxim's Complaint fails to allege a trade secret. "Trade secret" is defined by DTSA to mean:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if . . . the owner [of the trade secret] has taken reasonable measures to keep [the] information secret[ ] and . . . the information derives independent

10

>economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). In evaluating the level of specificity required to sufficiently allege a trade secret under DTSA and TUTSA, courts have required plaintiffs to describe the subject matter of the trade secret in enough detail "to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade" and "to permit the defendant to ascertain at least the boundaries within which the secret lies." *Am. Biocarbon, LLC v. Keating*, No. CV 20-00259-BAJ-EWD, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020) (quoting *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) and collecting cases); *see also StoneEagle Servs. v. Valentine*, No. 3:12-cv-1687-P, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013) ("[The] growing consensus seems to be in favor of requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue.") (collecting cases).

Applying this principle, district courts have dismissed DTSA and TUTSA claims that define the trade secrets at issue in broad categories and potentially unlimited terms that could encompass every aspect of a particular industry. *See, e.g.*, *Vendavo*, 2018 WL 1456697, at *3 (defining trade secrets at issue as consisting of: "source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives . . . ," and so on); *Am. Biocarbon*, 2020 WL 7264459, at *4 (defining a company's trade secrets as "studies; know how; scientific research; product research; product testing and results; product development research; market research and strategies; prospective client lists . . . ;" and so on). These courts reasoned that these types of categorical terms are merely descriptive of the type of information that "*may* qualify as

11

protectable trade secrets," rather than the specific trade secrets alleged to have been misappropriated in a given case. *Vendavo*, 2018 WL 1456697, at *4 (emphasis in original). TCT argues that Maxxim's Complaint, like the complaints at issue in the above cases, contains only allegations regarding broad categories of potentially protectable trade-secret information and fails to describe the trade secret at issue with the particularity required to satisfy pleading standards. The undersigned disagrees with TCT's characterization of the Complaint.

Maxxim's trade-secret allegations do not broadly encompass large categories of potentially protectable information at use in the entire oil and gas industry or trailer manufacturing industry but rather specifically focus on their uniquely shaped bottom-drop and end-dump trailers. (Compl. [#1], at ¶¶ 6–7.) The Complaint expressly compares Maxxim's allegedly proprietary design in terms of its "shape, size, and overall appearance" to the "pneumatic" or cylindrical-shaped trailers "like the trailers TCT used until just recently." (*Id.*) Additionally, Maxxim's Complaint includes photos of the trailers and the allegedly infringing trailers manufactured by Dustrail that Maxxim claims were purchased and used by TCT. (*Id.* at ¶¶ 6, 17–18.) Maxxim describes its trade secrets as its "design and manufacturing process" as to these specific trailers, as well as "its customer base and pricing" related to the trailers. (*Id.* at ¶ 7.) These allegations reflect a level of specificity sufficient to separate the alleged trade secrets from matters of general knowledge in the industry and put TCT "on notice of what is alleged to have been misappropriated." *See Comput. Scis. Corp. v. Tata Consultancy Servs. Ltd.*, No. 3:19-CV-970-X(BH), 2020 WL 2487057, at *4 (N.D. Tex. Feb. 7, 2020).

Maxxim has also adequately pleaded misappropriation and use of the alleged trade secrets by TCT. Under both DTSA and TUTSA, misappropriation of trade secrets includes (1) the "acquisition of a trade secret of another by a person who knows or has reason to know that

12

the trade secret was acquired by improper means" and (2) "the disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who had used improper means to acquire the trade secret." 18 U.S.C. § 1839(5); Tex. Civ. Prac. & Rem. Code § 134A.002(3). "Improper means include the breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A); Tex. Civ. Prac. & Rem. Code § 134A.002(2). Maxxim pleads that TCT had knowledge that Klassen's and Blatz's roles with Maxxim placed them in a position to gain access to Maxxim's design and manufacturing information as to the sand trailer at issue, as well as its customer base and pricing information, and that Klassen and Blatz obtained this information by breaching non-compete and confidentiality agreements to preserve Maxxim's confidential information. (Compl. [#1], at ¶¶ 14, 19–22.) These allegations sufficiently plead misappropriation and improper means.

Finally, Maxxim sufficiently pleads use of the trade-secret information at issue. "Use" of a trade secret means "marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through use of the information that is a trade secret." *Gen. Universal Sys., Inc. v. HAL Inc.*, 500 F.3d 444, 451 (5th Cir. 2007). Generally, "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a use." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 877 (5th Cir. 2013) (quoting *Gen. Universal Sys.*, 500 F.3d at 451). TCT claims that being a mere user of something someone else made using trade-secret information does not constitute "use" under DTSA and TUTSA because the alleged improper use is "so slight" that it can be said "to derive from other sources of information or from independent creation." *AMS Sensors USA, Inc. v. Renesas Elecs.*

*Am.*, No. 4:08-cv-00451, 2021 WL 765228, at *10 (E.D. Tex. Feb. 26, 2021) (quoting Restatement (Third) of Unfair Competition § 40 (1995)). But that is not what is alleged here. Maxxim alleges that TCT has used Maxxim's trade-secret information in its marketing, in soliciting customers, and manufacturing of at least 80 copycat trailers and that it expects to have a fleet of bottom-drop trailers identical to Maxxim's trailers within a year.[1] (Compl. [#1], at ¶¶ 21–24, 39, 29.) These allegations are sufficient to plead use under DTSA and TUTSA.

**B.  Maxxim pleads a plausible claim of tortious interference with prospective business relations.**

Maxxim alleges that TCT interfered with its prospective relationships with customers in the industry by marketing and manufacturing copycat trailers and contracting with Maxxim's customer base. (*Id.* at ¶¶ 68–70.) The elements of a claim of tortious interference with a prospective business relation are: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damages or loss as a result. *Sanger Ins. Agency v. Hub Int'l, Ltd.*, 802 F.3d 732, 748 (5th Cir. 2015). TCT argues that Maxxim's Complaint fails to allege a claim of tortious interference with prospective business relations because Maxxim does not allege any independently tortious conduct by TCT.

---

[1] For purposes of evaluating the Rule 12(b)(6) portion of TCT's motion to dismiss, this Court is limited to the pleadings, must accept the allegations in Maxxim's Complaint as true, and cannot consider the assertions in Mendez's declaration regarding TCT's manufacturing activities.

The District Court should find Maxxim to have adequately pleaded this element. To be independently tortious, "the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort" or wrongful under "the common law or by statute." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713, 726 (Tex. 2001). "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations." *Id.* Maxxim alleges independently wrongful conduct—violations of the Lanham Act, DTSA, and TUTSA. This conduct is already recognized to be wrongful under the common law or by statute and does not constitute the type of unfair non-actionable conduct described in *Sturges*. *See Pureshield, Inc. v. Allied Bioscience, Inc.*, No. 4:20-CV-734-SDJ, 2021 WL 4492861, at *7 (E.D. Tex. Sept. 30, 2021) (denying motion to dismiss claim of tortious interference with prospective business relations where complaint alleged false advertising under Lanham Act). TCT does not challenge any other element of Maxxim's claim of tortious interference with prospective business relations. Because Maxxim has alleged other wrongful conduct in addition to this tort, the District Court should deny TCT's motion to dismiss as to this claim.

**C. Maxxim pleads plausible claims of tortious interference with an existing contract and participation in a breach of fiduciary duty.**

Finally, Maxxim also pleads plausible claims of tortious interference with an existing contract and knowing participation in a breach of fiduciary duty. The elements of a claim of tortious interference with an existing contract are: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) interference that proximately caused damage; and (4) actual damage or loss. *Powell Indus., Inc. v. Allen,* 985 S.W.2d 455, 456 (Tex. 1998). Maxxim alleges that TCT knew or had reason to know of Maxxim's agreements with Klassen and Blatz to maintain confidentiality as to the

alleged trade-secret information and yet willfully and intentionally interfered with those agreements by contracting with TCT to purchase trailers. (Compl. [#1], at ¶¶ 59.)

These allegations also underlie Maxxim's claim of knowing participation in a breach of fiduciary duty. To plead such a claim, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the defendant knew of the fiduciary relationship; and (3) that the defendant was aware that it was participating in the breach of that fiduciary relationship. *Difusion, Inc. Difusion Venture Grp., LLC Difusion Venture Grp., LLC v. Difusion, Inc. Johns*, No. A-13-CV-258-LY, 2014 WL 12580438, at *3 (W.D. Tex. June 24, 2014). Maxxim alleges that TCT was aware of Klassen's and Blatz's fiduciary relationship with Maxxim and yet knowingly participated in inducing them to breach their duty of loyalty by purchasing copycat trailers from Dustrail. (Compl. [#1], at ¶¶ 62–65.)

TCT challenges the elements of intentional and willful interference as to these claims, arguing that there are no facts in the Complaint showing TCT had anything to do with Klassen's or Blatz's breach of their noncompete and confidentiality agreements with Maxxim. Yet Maxxim's Complaint contains allegations that TCT received an unsolicited quote from Klassen for the sale of a trailer identical to the one Maxxim manufactures for $500 less than Maxxim's outstanding quote; that TCT's Vice President of Operations responded to the quote with suspicion that Dustrail was selling copycat trailers; and that TCT nonetheless purchased the trailers and proceeded to manufacture, market, and sell Dustrail trailers in the logistics industry. (*Id.* at ¶¶ 18–22.) Maxxim also alleges that TCT was aware of Klassen's and Blatz's role with Maxxim and that it would have placed them in a position to access Maxxim's confidential information. (*Id.* at ¶ 14.)

To ultimately prevail on its claim of tortious interference of an existing contract, "there must be evidence that [TCT] was more than a willing participant—[TCT] must have knowingly induced one of the contracting parties to breach its obligations under a contract." *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 52 n.22 (Tex. App.—Texarkana 2012, pet. denied) (citing *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)). Whether Maxxim has this evidence remains to be seen, but Maxxim has pleaded sufficient facts from which a reasonable person could infer TCT's knowledge of a fiduciary and contractual relationship between Klassen and Blatz and their former employer as well as intentional acts by TCT to facilitate Klassen's and Blatz's breach of their duties and contractual obligations. This is enough at the pleading stage of the proceedings.

## IV.  Conclusion and Recommendation

Having considered TCT's motion, the response and reply thereto, the pleadings, the record, and the governing law, the undersigned recommends that Texas Chrome Transport, Inc.'s Motion to Dismiss [#32] be **DENIED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which

objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 23rd day of August, 2024.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE