IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MAXXIM INDUSTRIES USA II, LLC, MAXXIM INDUSTRIES II, S.DE R.L.DE C.V.., | § § § § § § § § § § § § § § | SA-24-CV-00046-FB |
| *Plaintiffs,* | | |
| vs. | | |
| TEXAS CHROME TRANSPORT, INC., GUERRA TRUCK CENTER, LLC, | | |
| *Defendants.* | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Texas Chrome Transport, Inc.'s Partial Motion to Dismiss Maxxim's First Amended Complaint [#61]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be denied.

**I. Background**

This action asserts alleged infringement of a proprietary design for sand trailers used in the oil and gas industry. Plaintiff Maxxim Industries USA II, LLC ("Maxxim") filed this suit against Defendant Texas Chrome Transport, Inc. ("TCT"), alleging that it is a Texas-based market leader in the design, manufacture, and sale of "bottom-drop" and "end-dump" sand trailers for use in the oil and gas industry. Defendant Texas Chrome Transport, Inc. ("TCT") is a

1

logistics company providing services across the Southern United States, including Texas, and was a prospective customer of Maxxim. Maxxim alleges that TCT is manufacturing and selling sand trailers like the ones Maxxim has been designing since 2017 by stealing Maxxim's designs and diverting customers from Maxxim's established customer base.

According to the Original Complaint, TCT gained access to Maxxim's proprietary and confidential information by contracting with former Maxxim employees, Peter Klassen and John Blatz, despite these employees signing Non-Competition or Confidentiality Agreements with Maxxim to preserve Maxxim's trade secrets. Maxxim alleges that, since separating their employment with Maxxim, Klassen and Blatz have formed a new company, Dustrail. Maxxim claims that Dustrail is manufacturing and selling sand trailers virtually identical to Maxxim's trailers and directly competing with Maxxim for sale of the trailers to TCT and other customers.

Maxxim's Original Complaint asserted the following causes of action against TCT regarding the sand trailers: (1) trade-dress infringement/unfair competition in violation of the Lanham Act, 15 U.S.C.S. § 1125(a)(1); (2) trade-secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1832, *et seq.*; (3) violation of the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A.003(a); (4) tortious interference with an existing contract; (5) knowing participation in Klassen's and Blatz's breach of fiduciary duty; and (6) tortious interference with a prospective business relationship. (*Id.* at ¶¶ 25–71.)

TCT filed a motion to dismiss, seeking dismissal for failure to join Dustrail, Klassen, and Blatz as necessary and indispensable parties under Rule 12(b)(7) and for failure to state a claim under Rule 12(b)(6) as to all claims other than Maxxim's claim arising under the Lanham Act.

The undersigned issued a report and recommendation to the District Court, recommending the District Court deny the motion. The District Court adopted the recommendation.

Maxxim thereafter filed a motion for leave to file an amended complaint to assert additional claims and to join additional parties. TCT did not file a response in opposition, and the Court granted the motion as unopposed. The resulting First Amended Complaint [#54] is the current live pleading.

The new pleading adds two new parties to the suit—Maxxim Industries II, S. de R.L. de C.V. ("Maxxim Mexico"), as an additional Plaintiff, and Guerra Truck Center, LLC ("GTC"), as an additional Defendant. According to the First Amended Complaint, Maxxim Mexico designs and manufactures the proprietary trailers at issue in Mexico and sells them to Maxxim USA for distribution in the United States. (First Am. Compl. [#54], at ¶ 9.) GTC is a truck and trailer dealership located in Texas that also operates a manufacturing plant in Monterrey, Mexico, where it manufactures trailers and parts for use in the construction and energy industries. (*Id.* at ¶ 11.) The Maxxim entities allege that TCT and GTC are conspiring to steal Maxxim's trade secrets. The First Amended Complaint realleges the claims asserted in the Original Complaint and adds the following additional causes of action: (1) unfair competition; (2) copyright infringement; and (3) conspiracy. (*Id.* at ¶¶ 89–109.)

TCT has now filed a partial motion to dismiss, which asks the Court to dismiss the newly asserted claim of copyright infringement for failure to state a claim. TCT also asks that the Court dismiss the other two new claims of unfair competition and conspiracy to the extent they are predicated on copyright infringement. Maxxim USA and Maxxim Mexico (together "Maxxim") filed a response in opposition to the motion [#64], to which TCT filed a reply [#65]. The motion is ripe for the Court's review.

## II.  Legal Standard

TCT moves for dismissal of Maxxim's copyright claim and related claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted).  However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).  In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief.  *See Twombly*, 550 U.S. at 570.

## III.  Analysis

Maxxim's First Amended Complaint alleges that TCT and GCT engaged in copyright infringement because Blatz impermissibly downloaded Maxxim's technical drawings of its

trailer designs before ending his employment with Maxxim. (First Am. Compl. [#54], at ¶ 95.) These Protected Drawings, which were marked as "PROPRIETARY AND CONFIDENTIAL" allegedly contained detailed diagrams conveying precise measurements and welding and material specifications for manufacturing the trailers. (*Id.*) According to the First Amended Complaint, Maxxim Mexico owns the Protected Drawings and all copyrights of the drawings. (*Id.*) Maxxim claims that Defendants have copied and continued to use the Protected Drawings without the consent of Maxxim Mexico to produce and manufacture TCT's fleet of trailers, which are substantially similar to the trailers depicted in the Protected Drawings, and to enhance other products in Defendants' possession. (*Id.* at ¶ 97.)

TCT asks the Court to dismiss Maxxim's newly asserted claim for copyright infringement for failure to state a claim. To the extent Maxxim's unfair competition and conspiracy claims are predicated on the claim of copyright infringement, TCT asks the Court to also dismiss those claims. The Court should deny the motion.

A claim for copyright infringement under the Copyright Act requires the plaintiff to show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999); *see also* 17 U.S.C. § 501. To establish ownership of a valid copyright, courts typically require plaintiffs to show the work is registered with the United States Copyright Office. *See* 17 U.S.C. § 411(a). However, Maxxim does not allege it has ownership of its copyright by virtue of registration with the United States Copyright Office. Instead, Maxxim alleges its "protected drawings" are subject to the Berne Convention's "foreign-works exemption" to Section 411(a)'s registration requirement because they were authored in Mexico. (First Am. Compl. [#54], at ¶ 96.) TCT does not challenge the sufficiency of Maxxim's pleading on the first element of its copyright

claim.  *See also Fourth Est. Pub. Benefit Corp. v. Wall-Street.com*, 586 U.S. 296, 306–07 (2019) (noting that "Congress removed foreign works from § 411(a)'s dominion in order to comply with the Berne Convention for the Protection of Literary and Artistic Works' bar on copyright formalities for such works").

The second element, copying, has two components: "factual copying" and "actionable copying."  *Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020).  In the absence of direct evidence of copying, a plaintiff can raise an inference of factual copying by showing that (1) the defendant "had access to the copyrighted work prior to creation of the infringing work" and (2) "probative similarity" between the two works.  *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1037 (5th Cir. 2015) (quotation omitted).  "A strong showing of probative similarity can make up for a lesser showing of access."  *Batiste*, 976 F.3d at 502.  A plaintiff may raise an inference of factual copying without any proof of access if the works are "strikingly similar."  *Id.*

"Not all copying, however, is copyright infringement."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  If factual copying is proven, the plaintiff must then establish that the copying is legally actionably by showing that "the allegedly infringing work is substantially similar to protectable elements of the infringed work."  *Lee*, 379 F.3d at 142.  "This usually requires a 'side-by-side comparison' of the works' protectable elements 'to determine whether a layman would view the two works as 'substantially similar.'"  *Batiste*, 976 F.3d at 502 (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 550 (5th Cir. 2015)).  TCT argues that Maxxim fails to allege sufficient facts to support the "factual copying" and "substantial similarity" elements of its copyright-infringement claim.

A.     **Maxxim has pleaded a plausible inference of factual copying.**

As to factual copying, TCT claims there are no allegations showing TCT had access to its drawings, as the only allegations concern Blatz impermissibly downloading the Protected Drawings without explanation as to how TCT obtained access to the drawings. To the contrary, Maxxim's copyright allegations are more than adequate to plead plausible access to the Protected Drawings when considered in the context of the overall allegations in the First Amended Complaint.

Maxxim's theory of its case is that TCT conspired with Klassen and Blatz to misappropriate and copy Maxxim Mexico's proprietary designs. (First Am. Compl. [#54], at ¶¶ 12, 97.) According to Maxxim, Blatz downloaded his entire Maxxim shared drive—including the Protected Drawings—onto an external device when he resigned from Maxxim in 2022. (*Id.* at ¶¶ 16, 95.) Klassen and Blatz allegedly then formed a new company, Dustrail, to compete with Maxxim, leveraging Maxxim's proprietary information, including the Protected Drawings, to manufacture and sell trailers that are virtually identical to Maxxim's. (*Id.* at ¶¶ 17–20.) Klassen and Blatz thereafter allegedly entered into negotiations with TCT for the purchase of Dustrail trailers through GTC. (*Id.* at ¶¶ 20–23.) As part of these negotiations, representatives of TCT allegedly engaged in extensive discussions with Klassen about the manufacture, specifications, and measurements of the trailers, and GTC's owner, Robert Guerra, visited Dustrail's manufacturing plant in Mexico. (*Id.* ¶¶ 23, 25.) Maxxim contends that at all times Dustrail's trailers have embodied Maxxim Mexico's Protected Drawings. (*Id.* ¶¶ 17, 19.)

"Access may be shown if a third party with possession of the Copyrighted Work was concurrently dealing with the copyright owner and alleged infringer." *Johnston v. Kroeger*, No. 1:20-CV-00497-RP, 2021 WL 3571279, at *3 (W.D. Tex. Aug. 11, 2021), *report and*

*recommendation adopted*, No. 1:20-CV-497-RP, 2021 WL 8442050 (W.D. Tex. Aug. 26, 2021) (citing *Am. Registry of Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695, 704–05 (W.D. Tex. 2013)). In *Johnston v. Kroeger*, the plaintiff, a musician, alleged that a band infringed on his copyrighted work—the composition of a song called "Rock Star." *Id.* at *1. The district court found that the plaintiff plausibly alleged the band's access to the copyrighted work for purposes of his claim of copyright infringement where the plaintiff provided a master recording of the song to the parent company of the band's record label during in-person meetings and as part of a press kit. *Id.* at *3. The district court reasoned that these facts could have given the band a reasonable opportunity to hear the plaintiff's copyrighted work—through its record label—and rejected the defendant's argument that the plaintiff failed to plead access to the work for purposes of establishing factual copying. *Id.*

TCT argues that the parties' relationship here is not analogous to the relationship at issue in *Johnson* because the third party was a parent to the subsidiary record label producing the defendant band's albums, whereas TCT was a customer of Dustrail and not its subsidiary. Yet nowhere in the *Johnson* opinion does the district court emphasize the parent-subsidiary relationship as the determinative factor in its access analysis. Rather, the court simply inquired as to whether access could be inferred based on dealings between a third party, the copyright owner, and the alleged infringer. *Id.* Here, Maxxim has plausibly alleged Defendants' access to the copyrighted material. Maxxim alleges that TCT and GCT, the alleged infringers, had direct engagement with the individual who stole the Protected Drawings, Blatz, and his company, Dustrail; TCT hired Dustrail to manufacture trailers for sale through GTC; GTC, acting as TCT's agent, visited Dustrail's manufacturing plant in Mexico to examine the sand trailers; and TCT,

8

GTC, and Dustrail engaged in numerous discussions regarding the specifications of the allegedly infringing trailers. (Am. Compl. [#54], at ¶ 24.)

Maxxim has also alleged "probative similarity" so that factual copying may be inferred based on the alleged access to the copyrighted material. Probative similarity is satisfied when the works "when compared as a whole, are adequately similar to establish appropriation." *Lee*, 379 F.3d at 141 (internal quotation and citation omitted). "A plaintiff can show probative similarity by pointing to any similarities between the two works, even as to unprotectable elements, that, in the normal course of events, would not be expected to arise independently." *Batiste*, 976 F.3d at 502 (internal quotation and citation omitted).

The First Amended Complaint contains images of Maxxim's proprietary sand trailers, which are characterized by a trapezoidal shape, aluminum siding, and access ladders placed on the center of the front face of the trailer. (Am. Compl. [#54], at 4.) The First Amended Complaint also includes images of the allegedly infringing trailers, which have a similar appearance. (*Id.* at 9.) Maxxim alleges that even Mendez, TCT's Vice President of Operations, noted the similar look of the two trailers. (*Id.* at ¶ 20.) The similarity of the two designs was also mentioned in a trade publication in an article featuring TCT's fleet of trailers attached to Maxxim's pleading. (Ex. G to Am. Compl. [#54-7], at 2–5.) These allegations plead that the Maxxim and Dustrail trailers are adequately similar to establish appropriation for purposes of the probative-similarity requirement.

**B.     Maxxim has pleaded substantial similarity between the copyrighted and allegedly infringing works.**

Maxxim's allegations regarding the similarity of the trailers at issue are also sufficient to plead "substantial similarity." Again, evaluating substantial similarity requires a side-by-side comparison of the works to determine whether a layman would view them as substantial similar.

9

*Noal Spice Designs*, 783 F.3d at 550. "Substantiality is measured by considering the qualitative and quantitative importance of the copied material to the plaintiff's work as a whole." *Batiste*, 976 F.3d at 502 (internal quotation and citation omitted). The Fifth Circuit has emphasized that substantial similarity "typically should be left to the factfinder" unless "the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression." *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 395 (5th Cir. 2001). *See also Liccardi v. Shorr*, No. 3:22-CV-02423-K-BT, 2023 WL 9102232, at *4 (N.D. Tex. Dec. 11, 2023), *report and recommendation adopted*, No. 3:22-CV-02423-K-BT, 2024 WL 57319 (N.D. Tex. Jan. 3, 2024) (granting motion to dismiss for failure to plead substantial similarity where comparison of two works revealed "no articulable similarities" between the works).

TCT contends that Maxxim's factual allegations only vaguely allege the Maxxim and Dustrail trailers are similar in overall appearance and, regardless, the trapezoidal shape employed by both companies is not unique and has been used in the industry for decades. In support of this argument, TCT directs the Court to its filing in response to Maxxim's motion for a temporary restraining order and preliminary injunction in which it included photographs of other trailers in the industry and discussed a trademark awarded to Beall Corporation for a similarly shaped trailer design in 1990. Yet, these facts are not contained in Maxxim's pleadings and therefore may not be considered in ruling on TCT's motion to dismiss. *See Cat & Dogma, LLC v. Target Corp.*, No. 20-50674, 2021 WL 4726593, at *4 (5th Cir. Oct. 8, 2021) (disregarding arguments regarding key factual differences between copyrighted and infringing design as improper in Rule 12(b)(6) posture).

As noted, Maxxim's Amended Complaint contains images of the copyrighted and allegedly infringing trailer designs. (Am. Compl. [#54], at 4, 9.) Comparing the two trailers and viewing them in the light most favorable to Maxxim, the designs appear substantially similar. The two trailers not only bear the same general trapezoidal shape, but they also have virtually identical structural angles and proportions. Both trailers have access ladders mounted on their front end, two sets of rear wheels, a set of front-end footers, aluminum siding with similar borders and framing, as well as other functionally similar characteristics underneath and on top of the trailers. In short, the similarity of the trailers is undeniable to a layperson's eye. Maxxim's First Amended Complaint therefore has sufficiently pleaded substantial similarity, i.e., actionable copying, and the District Court should deny the motion to dismiss Maxxim's copyright infringement claim.

Because Maxxim has pleaded a claim of copyright infringement, the District Court should also deny the motion to dismiss as to the other two new claims, unfair competition and conspiracy, as TCT did not advance any independent argument in support of dismissal of these claims.

## IV.  Conclusion and Recommendation

Having considered TCT's motion, the response and reply thereto, the pleadings and the governing law, the undersigned **recommends** that Texas Chrome Transport, Inc.'s Partial Motion to Dismiss Maxxim's First Amended Complaint [#61] be **DENIED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified

mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 22nd day of April, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE